IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| SHAUN STRICKLAND | CIVIL ACTION |
|---|---|
| v. | NO. 21-4141 |
| DELAWARE COUNTY et al. | |

**MEMORANDUM RE: DEFENDANTS' MOTIONS TO DISMISS**

**Baylson, J.**                                                                                          **April 19, 2022**

**I.      Introduction**

Two separate Motions to Dismiss are pending before the Court in this case arising from the medical treatment of Plaintiff Shaun Strickland at George W. Hill Correctional Facility. Defendants County of Delaware and Warden Esker Tatum have filed a Motion to Dismiss (ECF 19; County MtD), as have Defendants The GEO Group, Inc. and its employees Kristen Grady, John Christakis, Ronald B. Phillips, and Jeff Withelder (ECF 20; GEO MtD).  Plaintiff alleges that Defendants violated his rights under the United States Constitution, federal statutes, and Pennsylvania law.  Defendants move to dismiss all claims.

**II.     Background and Factual Allegations**

As alleged by Plaintiff, the events giving rise to this case are as follows.  Plaintiff Shaun Strickland is an individual with long-time opioid use disorder (OUD).  Prior to his incarceration at George W. Hill Correctional Facility, Strickland had been in treatment for his OUD at Recovery Centers for America.  As part of Strickland's treatment program, he took methadone daily.  (Am. Compl. ¶¶ 13–28.)

In August 2021, Strickland was arrested during a traffic stop based on a bench warrant for an alleged failure to appear for a hearing.  Strickland was jailed at George W. Hill Correctional

1

Facility in Delaware County.  (Id. ¶ 12.)  George W. Hill is managed by Defendant The GEO Group, Inc., a private correctional management company contracted by Defendant Delaware County.  (Id. ¶¶ 6, 124.)

Upon entering the facility, Strickland, informing Defendants Jeff Withelder and Ronald B. Phillips that he had been in treatment for OUD and had been receiving methadone daily, requested methadone treatment.  (Id. ¶¶ 29–30.)  Withelder is a Certified Physician Assistant who is employed by GEO and works at George W. Hill.  Phillips is a licensed Doctor of Osteopathic Medicine who is employed by GEO and serves as Medical Director of George W. Hill.  (Id. ¶¶ 10–11.)

Withelder and Phillips denied Strickland's request, informing him that, pursuant to George W. Hill's official policy, methadone is only provided to pregnant individuals with OUD.  (Id. ¶¶ 31–36.)  The policy was signed by Defendants Kristen Grady, George W. Hill's Health Services Administrator and a GEO employee, and John Christakis, George W. Hill's Chief Medical Officer and a GEO employee.  (Id. ¶¶ 31–36.)

Withelder and Phillips formulated a "care plan" for Strickland, consisting of Strickland undergoing forced withdrawal from methadone.  Strickland consequently experienced withdrawal symptoms—including bone and joint pain, aches, vomiting, diarrhea, nausea, anxiety, and depression—that continued throughout his period of incarceration at George W. Hill.  (Id. ¶¶ 37–40.)

During his incarceration, Strickland routinely requested and was routinely denied methadone treatment.  Strickland's attorney sent a letter to Grady, members of the Delaware County Jail Oversight Board, and Defendant Esker Tatum, George W. Hill's warden, requesting

that Strickland be provided with methadone treatment. This request was denied as well. (Id. ¶¶ 45–49.)

Strickland was released from George W. Hill in September 2021 and filed suit against Defendants. (Id. ¶ 53.) Plaintiff brings the following claims in his Amended Complaint (ECF 9):

1. **Count I**: Violation of the Americans with Disabilities Act against Defendant Delaware County;

2. **Count II**: Violation of the Rehabilitation Act against Defendants Delaware County and GEO Group;

3. **Count III**: Violation of the Fourteenth Amendment against Defendants Delaware County, Tatum, GEO Group, and GEO Employees; and

4. **Count IV**: Professional negligence against Defendants GEO Group and GEO Employees.

Defendants seek dismissal of all Counts for failure to state a claim. Plaintiff filed a Response (ECF 22).

**III.   Legal Standard**

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir.2002)). To survive the motion, a plaintiff must "plead 'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for misconduct alleged.'" Id. (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009)). Importantly, "threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

IV. Discussion

    a. **ADA and Rehabilitation Act**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

"The 'substantive standards for determining liability [under the ADA and Rehabilitation Act] are the same.'" Gibbs v. City of Pittsburgh, 989 F.3d 226, 229 (3d Cir. 2021) (quoting McDonald v. Pa. Dep't of Pub. Welfare, Polk Ctr., 62 F.3d 92, 95 (3d Cir. 1995)). The Court may therefore "address both claims in the same breath." Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009).

To state a claim under the ADA or the Rehabilitation Act, Plaintiff must allege that he 1) is a qualified individual with a disability, 2) who was precluded from participating in a service, program, or activity, or otherwise was subject to discrimination, 3) because of his disability. Furgess v. Pa. Dep't of Corr., 933 F.3d 285, 288–89 (3d Cir. 2019). The phrase "service, program, or activity" is "extremely broad in scope and includes anything a public entity does." Furgess, 933 F.3d at 289 (citation omitted).

### i. Qualified Individual

There is little dispute between the parties at this stage that, based on the facts alleged, Strickland is a qualified individual with a disability in the form of his OUD. The ADA defines a "disability" as a "physical or mental impairment that substantially limits one or more major life activities," and the ADA's implementing regulations explicitly state that "drug addiction" constitutes a physical or mental impairment. 42 U.S.C. § 12102; 28 C.F.R. § 35.108(b)(2).

### ii. Precluded from Participating

Defendants contend that Plaintiff is essentially alleging only that he was denied proper medical treatment, not that he was excluded from any specific program, service, or activity. (County MtD 6–7.)  The Court disagrees.

"Modern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in')." Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998); see also Furgess, 933 F.3d at 290 ("[T]he Supreme Court has stated that a prison's refusal to accommodate inmates' disabilities 'in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs' constitutes a denial of the benefits of a prison's services, programs, or activities . . . ." (citing United States v. Georgia, 546 U.S. 151, 157 (2006))).

Plaintiff has properly alleged that, by denying him his prescribed medical treatment, correctional officials denied Strickland the benefit of the facility's medical services. (Am Compl. ¶¶ 29–41.)  Plaintiff has also properly alleged that, by denying him his prescribed medication, correctional officials precluded Strickland from participating in exercise and meals. (Id. ¶¶ 42–46.)

5

### iii. Discrimination on the Basis of Disability

"Discrimination under the ADA [and the Rehabilitation Act] encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999).

Defendants assert that denying Strickland his prescribed methadone treatment does not constitute discrimination on the basis of disability because methadone treatment is denied to all non-pregnant inmates, disabled or otherwise. (County MtD 11–13; GEO MtD 14–15.) Plaintiff counters that George W. Hill's methadone policy is facially discriminatory, "singl[ing] out Mr. Strickland and others with OUD for categorical exclusion from minimally adequate medical treatment at the jail." (MtD Resp. 11.) Plaintiff further argues that Defendants' alleged categorical refusal to modify George W. Hill's methadone policy to accommodate Strickland's disability constitutes disability-based discrimination under the ADA and the Rehabilitation Act. (Id. 13–14.)

The Court finds that Plaintiff has adequately pleaded that he experienced disability-based discrimination. Plaintiff has plausibly alleged that the methadone policy may prevent people with OUD, such as Strickland, from receiving adequate medical care at George W. Hill. (Am. Compl. ¶¶ 129–45.) Plaintiff has also plausibly alleged that Defendants failed to accommodate his disability, which Congress has recognized "will often have the same practical effect as outright exclusion." Tennessee v. Lane, 541 U.S. 509, 511 (2004). Assuming Plaintiff's non-conclusory allegations to be true, Defendants failed to undertake any individualized review of Strickland's situation to determine whether he could be safely provided with his prescribed medical treatment,

provide Strickland with an adequate alternative treatment, or otherwise reasonably accommodate Strickland's disability.

Defendants' argument that the methadone policy cannot be discriminatory because it contains an exception for pregnant people is unavailing. Plaintiff has alleged that Defendants denied him his prescribed medical treatment and otherwise failed to reasonably accommodate his OUD. The fact that this denial was pursuant to a policy that contains an exception for pregnant people does not prevent it from being discriminatory under federal law. If anything, the alleged pregnancy exception to the methadone policy may support an inference that Defendants were capable of safely making exceptions to the methadone policy but failed to do so for Strickland.

### iv. Intentional Discrimination

Because Plaintiff seeks compensatory damages, he must also plead intentional discrimination. S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 261 (3d Cir. 2013) ("[C]laims for compensatory damages under § 504 of the RA and § 202 of the ADA also require a finding of intentional discrimination."). "To prove intentional discrimination, an ADA claimant must prove at least deliberate indifference, and to plead deliberate indifference, a claimant must allege '(1) knowledge that a federally protected right is substantially likely to be violated . . . and (2) failure to act despite that knowledge.'" Haberle v. Troxell, 885 F.3d 170, 181 (3d Cir. 2018) (citations omitted).

The Court finds that Plaintiff's allegations are sufficient to support an intentional discrimination theory. The alleged facts suggest that Defendants were aware of the value of methadone as an OUD treatment, as George W. Hill allows it as a treatment for pregnant people with OUD. (Am. Compl. ¶ 122.) The alleged facts also plausibly suggest that Defendants were aware of the inadequacy of the OUD treatment provided by George W. Hill. (Id. ¶¶ 136–40.) See

7

Delaware Cnty. Jail Oversight Bd., <u>Resolution 2021-1: Resolution Calling for Expansion of Treatment for Inmates with Opioid Use Disorder</u>, https://delcopa.gov/departments/prison/pdfs/JOBresolution20201.pdf. Nonetheless, alleges Plaintiff, Defendants denied Plaintiff his prescribed treatment—a denial unlikely to occur were Strickland seeking a common prescribed treatment for asthma or diabetes—and failed to provide an adequate alternative. The Court finds that these allegations, if true, can plausibly support a claim for compensatory damages

The Court concludes that Plaintiff has properly stated his claims under the ADA and the Rehabilitation Act.

### b. Fourteenth Amendment

#### i. Substantive Standards

"[U]nder the Due Process Clause [of the Fourteenth Amendment], a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." <u>Hubbard v. Taylor</u>, 399 F.3d 150, 158 (3d Cir. 2005) (citing <u>Bell v. Wolfish</u>, 441 U.S. 520, 535–36 (1979)). To plead that inadequate medical during pretrial detention constitutes "punishment" in violation of the Fourteenth Amendment, a plaintiff must allege "(i) a serious medical need, and (ii) acts or omissions by prison [or jail] officials that indicate deliberate indifference to that need." <u>Natale v. Camden Cnty. Corr. Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003).

Defendants do not dispute at this stage that Strickland's OUD qualifies as a serious medical need. (County MtD 14–16; GEO MtD 17–18.) However, Defendants essentially argue that Defendant has failed to plausibly allege deliberate indifference because medical staff at George W. Hill allegedly formulated a "care plan" for Strickland consisting of forced withdrawal. (GEO MtD 19.)

The Court rejects Defendants' argument. Plaintiff has plainly alleged that he informed medical staff that he had been prescribed a common and medically accepted treatment for OUD, that he was denied that treatment pursuant to an official policy, and that the forced withdrawal that he was instead subjected to caused him substantial pain and suffering. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (discussing how the deliberate indifference standard may be met "[w]here prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,'" or "where 'knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care'" (citations omitted)). Plaintiff's allegations are sufficient at this stage to sustain his Fourteenth Amendment claim.

### ii. Liability of Defendants

#### 1. Delaware County and GEO Group

"When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." Mulholland v. Gov't Cnty., 706 F.3d 227, 237 (3d Cir. 2013). Similarly, "a private entity can only be liable under § 1983 when a constitutional injury results from the implementation or execution of an officially adopted policy or informally adopted custom." Short v. Adams, No. CV 17-4544, 2019 WL 331679, at *3 (E.D. Pa. Jan. 25, 2019) (Pappert, J.); see Natale, 318 F.3d at 583–84 (sustaining a Section 1983 claim alleging inadequate medical care against a prison contractor).

Defendants contend that Plaintiff has failed to adequately allege that Delaware County and the GEO Group are liable for his alleged Fourteenth Amendment injury, averring that he has failed to allege any constitutional transgression because there is no constitutional right to methadone.

9

(County MtD 23.) However, Defendants misstate Plaintiff's position. Plaintiff does not allege that he has a constitutional right to methadone that was violated. Rather, Plaintiff alleges that he has a constitutional right to adequate medical care that was violated.

Defendants also appear to argue that Plaintiff has failed to allege that the denial of his prescribed methadone treatment was pursuant to an official policy. (GEO MtD 12.) Plaintiff has plainly made just such an allegation and cited relevant George W. Hill policy documents in his Amended Complaint. (Am. Compl. ¶¶ 129–46.)

The Court finds that Plaintiff has properly alleged a constitutional violation traceable to Delaware County and the GEO Group.

### 2. Defendants Tatum, Christakis, and Grady

"[P]olicymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted). Additionally, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." Id.

Defendants contend that Plaintiff has not alleged sufficient facts to tie Defendants Tatum, Christakis, and Grady to the alleged constitutional violation; neither Christakis nor Grady are alleged to have directly treated Strickland, and Tatum is not a medical officer at all. (County MtD 19–20; GEO MtD 19.) The Court finds otherwise.

Plaintiff alleges that Defendant Tatum, as warden of George W. Hill, was responsible for overseeing all aspects of George W. Hill's operation and had rulemaking and policymaking

10

authority. (Am. Compl. ¶ 126.) Plaintiff further alleges that Tatum was present at a May 2021 meeting at which the inadequacy of George W. Hill's existing OUD treatment was discussed. (Id. ¶ 143.) Finally, Plaintiff alleges that his counsel sent Tatum a letter describing Strickland's conditions and requesting that he be provided with methadone treatment. (Id. ¶ 48.)

Plaintiff's Amended Complaint draws a similar nexus between Defendants Christakis and Grady and the alleged constitutional violation. Plaintiff alleges that Christakis and Grady, as, respectively, George W. Hill's Chief Medical Officer and Health Services Administrator, signed the policy outlining withdrawal for people incarcerated at George W. Hill. (Id. ¶ 67.) Plaintiff also alleges that Christakis and Grady, as well as Tatum, were aware of a resolution passed by Delaware County in February 2021, which described George W. Hill's existing OUD treatment as inadequate. (Id. ¶¶ 138–41.) Finally, Plaintiff alleges that his counsel sent Grady, like Tatum, a letter describing Strickland's conditions and requesting that he be provided with his methadone treatment. (Id. ¶ 48.)

The Court concludes that these allegations support a plausible inference that Defendants Tatum, Christakis, and Grady, with deliberate indifference to the consequences, maintained a policy—the ban on methadone treatment for OUD—that caused the alleged constitutional violation.

### 3. Defendants Withelder and Phillips

Defendants assert that Plaintiff has failed to state a claim against Defendants Withelder and Phillips, the medical personnel who directly treated Strickland, because Plaintiff has not alleged that Withelder and Philips outright refused to treat Strickland. (GEO MtD 19.) Defendants characterize Plaintiff's allegations as amounting to no more than dissatisfaction with the particular treatment he received. (GEO MtD 19.)

The constitutional violation that Plaintiff alleges is not that he received *no* medical care—it is that he received *inadequate* medical care. Defendants cite no support for their position that stating a claim for constitutionally inadequate medical care requires alleging that the plaintiff received no medical care whatsoever. The Court therefore rejects this argument.

### c. Professional Negligence

#### i. GEO Group Employees

To state a claim under Pennsylvania law for professional negligence based on medical care, "a plaintiff must 'establish a duty owed by the [medical professional] to the patient, a breach of that duty by the [medical professional], that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of the harm.'" Toogood v. Owen J. Rogal, D.D.S., P.C., 824 A.2d 1140, 1145 (Pa. 2003). A medical professional breaches their professional duty when they make an "unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient." Id.

Defendants aver that the professional negligence claims against Defendants Withelder, Phillips, Christakis, and Brady should be dismissed because Plaintiff has not alleged that they breached any duty to him. (GEO MtD 19–20.)

The Court finds that Defendant has adequately pleaded his claims against Defendants Withelder and Phillips. Plaintiff has alleged that Withelder and Phillips refused to provide Strickland a prescribed and medically well-accepted treatment without medical justification, causing him considerable pain and suffering as a result. (Am. Compl. ¶¶ 29–53.) Whether Plaintiff's allegations are accurate remains to be seen, and Plaintiff will have to present evidence to support his allegations if he is to ultimately prevail. See Toogood, 824 A.2d at 1145 ("Because the negligence of a physician encompasses matters not within the ordinary knowledge and

experience of laypersons a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury.") But at this stage, Plaintiff's allegations are sufficient to withstand dismissal.

For these same reasons, the Court finds that Defendant has adequately pleaded his professional negligence claims against Defendants Christakis and Grady. Though Defendants reason that Christakis and Grady did not directly treat Strickland and therefore could not have breached a duty to him, Plaintiff has plausibly alleged that Christakis and Grady's maintenance of George W. Hill's methadone policy was a proximate cause of his injury.

### ii. GEO Group

Because Plaintiff has stated a claim against GEO Group employees for actions unambiguously within the scope of their employment, he has also stated a claim for professional negligence against the GEO Group on the basis of vicarious liability. See Ludwig v. McDonald, 204 A.3d 935, 943 (Pa. Super. Ct. 2019) ("Under Pennsylvania law, in order to hold an employer vicariously liable for the negligent acts of its employee, these acts must be 'committed during the course of and within the scope of the employment.'" (quoting Sutherland v. Monongahela Valley Hosp., 856 A.2d 55, 62 (Pa. Super. 2004))).

### V. Conclusion

For the foregoing reasons, the Court will deny Defendants' Motions. An appropriate Order follows.

O:\CIVIL 21\21-4141 Strickland v. Delaware County et al\21cv4141 Memorandum re MtD.docx